**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

| | |
|---|---|
| BRETT HODOCK, Individually and for Others Similarly Situated | Case No. 1:25-cv-00231 |
| v. | Jury Trial Demanded |
| CLEVELAND-CLIFFS INC. | FLSA Collective Action |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Brett Hodock (Hodock) brings this collective action to recover unpaid wages and other damages from Cleveland-Cliffs Inc. (Cleveland-Cliffs).

2. Cleveland-Cliffs employed Hodock as one of its Hourly Employees (defined below) in McDowell County, West Virginia.

3. Cleveland-Cliffs paid Hodock and the other Hourly Employees by the hour.

4. Hodock and the other Hourly Employees regularly work more than 40 hours a workweek.

5. However, Cleveland-Cliffs does not pay Hodock and the other Hourly Employees for all their hours worked, including overtime hours.

6. Instead, Cleveland-Cliffs requires Hodock and the other Hourly Employees to suit out in protective clothing and safety gear necessary perform their job duties and gather other tools and equipment, while on Cleveland-Cliffs' premises, "off the clock."

7. And Cleveland-Cliffs requires Hodock and the other Hourly Employees to change out of and store their safety gear and protective clothing, store other tools and equipment, and wash-up, while on Cleveland-Cliff's premises "off the clock" (¶¶ 6-7 collectively Cleveland Cliff's "off the clock policy").

8. Cleveland-Cliffs does not pay Hodock and the other Hourly Employees for this time they spend donning and doffing their safety gear and protective clothing, gathering and storing other tools and equipment, and washing up "off the clock," before and after their shifts.

9. Additionally, Cleveland-Cliffs pays Hodock and the other Hourly Employees non-discretionary bonuses, including safety and production bonuses, that it fails to include in their regular rates of pay for overtime purposes (Cleveland-Cliffs' "bonus pay scheme").

10. Cleveland-Cliffs' off the clock policy and bonus pay scheme violate the Fair Labor Standards Act (FLSA) by failing to compensate Hodock and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12. This Court has personal jurisdiction over Cleveland-Cliffs based on its substantial contacts with and business done in West Virginia, including employing Hodock and other Hourly Employees in West Virginia.

13. Venue is proper because a substantial part of the events or omissions giving rise to this claim occurred in McDowell County, West Virginia, which is in this District and Division. 28 U.S.C. § 1391(b)(2).

14. Specifically, Cleveland-Cliffs employed Hodock and other Hourly Employees in McDowell County, West Virginia pursuant to its off the clock policy and bonus pay scheme.

## PARTIES

15. Cleveland-Cliffs employed Hodock at its underground coal mine, Mine No. 39, from approximately January 2023 until April 2024.

16. Throughout his employment, Cleveland-Cliffs subjected Hodock to its off the clock policy and bonus pay scheme.

17. Hodock's written consent is attached as **Exhibit 1**.

18. Hodock brings this collective action on behalf of himself and other Cleveland-Cliffs employees on whom Cleveland-Cliffs imposed its off the clock policy and/or paid under its bonus pay scheme.

19. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Cleveland-Cliffs employees who worked at a Cleveland-Cliffs mine and/or facility registered with the Mine Safety and Health Administration during the last three years through final resolution of this action (the "Hourly Employees").**

20. Cleveland-Cliffs is an Ohio corporation headquartered in Cleveland, Ohio.

21. Cleveland-Cliffs may be served with process through its registered agent: **James D. Graham, 200 Public Square, Suite 3300, Cleveland, Ohio 44114**, or wherever he may be found.

## FLSA COVERAGE

22. At all relevant times, Cleveland-Cliffs was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

23. At all relevant times, Cleveland-Cliffs was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

24. At all relevant times, Cleveland-Cliffs was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, tools, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

25. At all relevant times, Cleveland-Cliffs had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

26. At all relevant times, Hodock and the other Hourly Employees were Cleveland-Cliffs' "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

27. At all relevant times, Hodock and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

28. Cleveland-Cliffs bills itself as "a leading North America-based steel producer with focus on value-added sheet products."[1]

29. It touts its "vertically integrated profile from mined raw materials, direct reduced iron, and ferrous scrap to primary steelmaking and downstream finishing, stamping, tooling and tubing," which includes "operat[ing] a coal mining complex in West Virginia."[2]

30. Cleveland-Cliffs employs approximately 30,000 employees in North America and believes its "employee-centric management philosophy is the key to our success."[3]

31. To meet its business objectives, Cleveland-Cliffs employs workers, including Hodock and the other Hourly Employees, to mine and process coal, taconite, and other metals and minerals.

32. For example, Cleveland-Cliffs employed Hodock as a move crew operator from approximately January 2023 until April 2024 at its Mine No. 29 in McDowell County, West Virginia.

33. As a move crew operator, Hodock's job duties included advancing and maintaining the continuous miner belt and accompanying power systems as necessary to maintain the flow of extracted coal.

---

[1] https://www.clevelandcliffs.com/about (last visited April 3, 2025).
[2] Cleveland-Cliffs Inc., Annual Report (Form 10-K) at p. 4, 7 (February 25, 2025).
[3] *Id.* at p. 15.

34. Hodock's job duties likewise included donning and doffing required safety gear and protective clothing, gathering and storing other necessary tools and equipment, and washing up on Cleveland-Cliff's premises, in accordance with its direction before and after his shifts.

35. Throughout his employment, Hodock recorded his "on the clock" hours through Cleveland-Cliff's designated timekeeping system.

36. Thus, Cleveland-Cliffs' employment records reflect the number of "on the clock" hours Hodock recorded working each week.

37. Cleveland-Cliffs paid Hodock approximately $34 an hour.

38. Throughout his employment, Hodock regularly worked more than 40 hours a workweek.

39. Hodock typically worked 10 to 12 hours a day and 5 to 6 days a week (50 to 72 hours a workweek) "on the clock."

40. But throughout his employment, Cleveland-Cliffs did not pay Hodock for all his hours worked.

41. Instead, throughout his employment, Cleveland-Cliffs has subjected Hodock to off the clock policy.

42. Specifically, Cleveland-Cliffs required Hodock to dress out in protective clothing and safety gear (including hard hat, head lamp, ear protection, safety glasses, reflective clothing, safety gloves, steel toed boots, dust mask, self-contained self-rescuer, proximity detector, GPS tracker) fundamentally necessary to performing his job, gather necessary tools and equipment (such as channel lock pliers, ratchets, signage, reflectors) "off the clock," and without compensation.

43. This took Hodock approximately 30 to 40 minutes each workday.

44. Hodock could not perform his principal job duties in accordance with Cleveland-Cliffs' policies, procedures and expectations without this protective clothing and safety gear and other equipment.

45. Indeed, much of the gear Hodock utilized is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 75, *et seq*; 30 C.F.R. § 77, *et seq*.

46. The donning of protective clothing and safety gear and gathering of other tools and equipment are therefore integral and indispensable work duties for Hodock.

47. Likewise, Cleveland-Cliffs required Hodock to remove and store his safety gear and protective clothing, store the tools and other equipment, and wash up each day after his shift, on its premises, all "off the clock" and without compensation.

48. This took Hodock approximately 30 to 45 minutes each workday.

49. Hodock could not perform his job duties in accordance with Cleveland-Cliff's policies, procedures, and expectations without removing and storing this safety gear and protective clothing, storing the other tools and equipment, and washing up each workday.

50. Hodock could not safely perform his job duties in accordance with Cleveland-Cliff's policies, procedures, and expectations without removing and storing this safety gear and protective clothing, storing the other tools and equipment, and washing up each workday.

51. Removal and storage of safety gear and protective clothing, storing of other tools and equipment, and washing up each workday were therefore integral and indispensable work duties for Hodock.

52. But under its off the clock policy, Cleveland-Cliffs did not compensate Hodock for the same.

53. Thus, because of its off the clock policy, Cleveland-Cliffs failed to pay Hodock overtime wages for all his overtime hours worked during workweeks he worked in excess of 40 hours.

54. Hodock and the other Hourly Employees perform their jobs under Cleveland-Cliffs' supervision and use materials, equipment, and technology Cleveland-Cliffs approves and supplies.

55. Cleveland-Cliffs requires Hodock and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

56. Hodock and the other Hourly Employees' work must strictly adhere to the uniform standards put in place by Cleveland-Cliffs.

57. At the end of each pay period, Hodock and the other Hourly Employees receive wages from Cleveland-Cliffs that are determined by common systems and methods that Cleveland-Cliffs selects and controls.

58. Likewise, the other Hourly Employees typically work approximately 10 to 12 hours a day and 5 to 6 days a week (50 to 72 hours a workweek) "on the clock."

59. And Cleveland-Cliffs pays them by the hour.

60. But, just as with Hodock, Cleveland-Cliffs fails to pay them for all their hours worked.

61. Indeed, Cleveland-Cliffs subjects the other Hourly Employees to the same or similar off the clock policy it imposed on Hodock.

62. Specifically, just as with Hodock, Cleveland-Cliffs requires them to dress out in protective clothing and safety gear (including hard hat, head lamp, ear protection, safety glasses, reflective clothing, safety gloves, steel toed boots, dust mask, self-contained self-rescuer, proximity detector, GPS tracker) fundamentally necessary to performing his job, gather necessary tools and equipment (such as channel lock pliers, ratchets, signage, reflectors) "off the clock," and without compensation.

63. And, like Hodock, Cleveland-Cliffs requires the other Hourly Employees to remove and store their safety gear and protective clothing, store the tools and other equipment, and wash up each day after their shifts, on its premises, all "off the clock" and without compensation.

64. And like Hodock, much of the gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 75, *et seq*; 30 C.F.R. § 77, *et seq*.

65. But, like Hodock, the other Hourly Employees are regularly forced to perform this compensable work "off the clock" before and after their shifts.

66. Thus, just as with Hodock, Cleveland-Cliffs does not pay the other Hourly Employees for this integral and indispensable work they are required to perform "off the clock" before and after their shifts.

67. And, just as with Hodock, these job duties take the other Hourly Employees approximately an hour to an hour and 15 minutes to complete each workday.

68. Cleveland-Cliffs fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises that it does not want performed.

69. And Cleveland-Cliffs knows, should know, or recklessly disregards whether Hodock and the other Hourly Employees routinely perform integral and indispensable work "off the clock," and without compensation, before and after their scheduled shifts for Cleveland-Cliffs' primary benefit.

70. Thus, Cleveland-Cliffs requires, requests, suffers, or permits, Hodock and the other Hourly Employees to work "off the clock," without compensation, before and after their shifts.

71. Despite accepting the benefits, Cleveland-Cliffs does not pay Hodock and the other Hourly Employees for the compensable work they perform "off the clock."

72. Thus, under Cleveland-Cliffs' uniform off the clock policy, Hodock and the other Hourly Employees are denied overtime wages for the compensable work they perform "off the clock" before and after their scheduled shifts during workweeks in which they work more than 40 hours.

73. And throughout their employment, Cleveland-Cliffs has not paid Hodock and the other Hourly Employees at the required premium rate for all hours worked in excess of 40 in a workweek.

74. Instead, Cleveland-Cliffs pays Hodock and the other Hourly Employees under its bonus pay scheme.

75. Specifically, Cleveland-Cliffs pays Hodock and the other Hourly Employees non-discretionary bonuses, including production and safety bonuses, that it fails to include in these employees' regular rates of pay for overtime purposes.

76. For example, on November 10, 2023, Cleveland-Cliffs paid Hodock a production and safety bonus of $2,138.15:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Bonus | | | 2,138.15 | 6,479.95 |
| Regular | | | | 47,855.62 |
| Overtime | | | | 22,498.58 |
| Emt Allowance | | | | 900.00 |
| Holiday | | | | 1,088.00 |
| Oper Roofbolter | | | | 4,271.74 |
| Oper Shtl Car | | | | 1,017.80 |
| Temp Foreman | | | | 390.80 |
| Vacation | | | | 2,352.00 |
| **Gross Pay** | | | **$2,138.15** | 86,854.49 |

77. But Cleveland-Cliffs did not include this bonus in Hodock's regular rate for overtime purposes during the subsequent pay period ending November 18, 2023 (nor any other pay period):

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 34.0000 | 80.00 | 2,720.00 | 50,575.62 |
| Overtime | 51.0000 | 21.25 | 1,083.75 | 23,582.33 |
| Bonus | | | | 6,479.95 |
| Emt Allowance | | | | 900.00 |
| Holiday | | | | 1,088.00 |
| Oper Roofbolter | | | | 4,271.74 |
| Oper Shtl Car | | | | 1,017.80 |
| Temp Foreman | | | | 390.80 |
| Vacation | | | | 2,352.00 |
| **Gross Pay** | | | **$3,803.75** | 90,658.24 |

78. Thus, under Cleveland-Cliffs' bonus pay scheme, it does not pay Hodock and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek.

79. The Hourly Employees are thus uniformly subject to the same or similar unlawful policies—Cleveland-Cliffs' off the clock policy and bonus pay scheme—for similar work, in willful violation of the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

80. Hodock brings his claims as a collective action under Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

81. Like Hodock, the other Hourly Employees are victimized by Cleveland-Cliffs' off the clock policy and bonus pay scheme.

82. Other Hourly Employees worked with Hodock and indicated they were paid in the same manner, performed similar work, and were subject to Cleveland-Cliffs' same off the clock policy and bonus pay scheme.

83. Based on his experience with Cleveland-Cliffs, Hodock is aware its off the clock policy and bonus pay scheme were imposed on other Hourly Employees.

84. The Hourly Employees are similarly situated in the most relevant respects.

85. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate for all overtime hours worked.

86. Therefore, the specific job titles or job locations of the Hourly Employees do not prevent collective treatment.

87. Rather, Cleveland-Cliffs' off the clock policy and bonus pay scheme render Hodock and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

88. Cleveland-Cliffs' records reflect the number of "on the clock" hours the Hourly Employees recorded working each week.

89. Cleveland-Cliffs' records also show Cleveland-Cliffs paid the Hourly Employees non-discretionary bonuses.

90. Cleveland-Cliffs' records show it failed to include these non-discretionary bonuses in their regular rates of pay.

91. The back wages owed to Hodock and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

92. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Cleveland-Cliffs' records, and there is no detraction from the common nucleus of liability facts.

93. Therefore, the issue of damages does not preclude collective treatment.

94. Hodock's experiences are therefore typical of the experiences of the other Hourly Employees.

95. Hodock has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent collective treatment.

96. Like each Hourly Employee, Hodock has an interest in obtaining the unpaid wages owed under federal law.

97. Hodock and his counsel will fairly and adequately protect the interests of the Hourly Employees.

98. Hodock retained counsel with significant experience in handling complex collective action litigation.

99. Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Cleveland-Cliffs will reap the unjust benefits of violating the FLSA.

100. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

101. Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and Cleveland-Cliffs.

102. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

103. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

104. Among the common questions of law and fact are:

    a. Whether Cleveland-Cliffs imposed its off the clock policy on the Hourly Employees;

    b. Whether Cleveland-Cliffs' off the clock policy deprived the Hourly Employees of overtime compensation for overtime hours worked;

    c. Whether Cleveland-Cliffs paid the Hourly Employees non-discretionary bonuses;

      d.      Whether Cleveland-Cliffs engaged in a policy or practice of failing to include non-discretionary bonuses in the Hourly Employees' regular rates of pay for the purpose of calculating overtime wages;

      e.      Whether Cleveland-Cliffs failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

      f.      Whether Cleveland-Cliffs' decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

      g.      Whether Cleveland-Cliffs' violations were willful.

105. As part of its regular business practices, Cleveland-Cliffs intentionally, willfully, and repeatedly violated the FLSA with respect to Hodock and the other Hourly Employees.

106. Cleveland-Cliffs' off the clock policy and bonus pay scheme deprived Hodock and the other Hourly Employees of the overtime wages at the required premium rate—based on all remuneration—for overtime hours worked, in willful violation of the FLSA.

107. There are many similarly situated Hourly Employees who have been denied overtime wages who would benefit from the issuance of a court supervised notice of this lawsuit and the opportunity to join it.

108. The Hourly Employees are known to Cleveland-Cliffs, are readily identifiable, and can be located through Cleveland-Cliffs' business and personnel records.

### CLEVELAND-CLIFFS' VIOLATIONS WERE WILLFUL

109. Cleveland-Cliffs knew it employed the Hourly Employees.

110. Cleveland-Cliffs knew it was subject to the FLSA's overtime provisions.

111. Cleveland-Cliffs knew Hodock and the other Hourly Employees were its non-exempt employees entitled to overtime pay.

112. Cleveland-Cliffs knew the FLSA required it to pay non-exempt employees, including Hodock and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek.

113. Cleveland-Cliffs knew Hodock and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because their "on the clock" hours were recorded via its timekeeping system.

114. Cleveland-Cliffs knew it paid the Hourly Employees according to its off the clock policy.

115. Cleveland-Cliffs knew it had a duty to ensure the Hourly Employees were not performing work "off the clock" (without pay).

116. Cleveland-Cliffs knew it required the Hourly Employees to don and doff safety gear and protective clothing, gather and store tools and other equipment, and wash up before and after their shifts, "off the clock."

117. Cleveland-Cliffs knew it controlled the Hourly Employees' work procedures.

118. Cleveland-Cliffs knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with Cleveland-Cliffs.

119. Cleveland-Cliffs knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement to their principal job duties with Cleveland-Cliffs.

120. Cleveland-Cliffs knew the Hourly Employees routinely performed this daily, required "off the clock" work for Cleveland-Cliffs' predominant benefit.

121.    In other words, Cleveland-Cliffs knew the Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing, gathering/storing tools and other equipment, and washing up) "off the clock" and without compensation.

122.    Cleveland-Cliffs knew it paid Hodock and the other Hourly Employees non-discretionary bonuses, including safety and production bonuses.

123.    Cleveland-Cliffs knew these non-discretionary bonuses were not included in Hodock's and the other Hourly Employees' regular rates of pay for overtime purposes.

124.    And Cleveland-Cliffs knew the FLSA required it to pay Hodock and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

125.    Cleveland-Cliffs knew Hodock, and the other Hourly Employees regularly worked in excess of 40 hours a workweek.

126.    Thus, Cleveland-Cliffs knew, should have known, or recklessly disregarded whether it failed to pay Hodock and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all the hours they worked in excess of 40 a workweek.

127.    Cleveland-Cliffs' failure to pay Hodock and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

128.    Cleveland-Cliffs knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme and off the clock policy that deprived Hodock and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

## CAUSE OF ACTION

### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

129. Hodock brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

130. Cleveland-Cliffs violated, and is violating, the FLSA by employing non-exempt employees, such as Hodock and the other Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

131. Cleveland-Cliffs' unlawful conduct harmed Hodock and the other Hourly Employees by depriving them of the overtime wages they are owed.

132. Accordingly, Cleveland-Cliffs owes Hodock and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

133. Because Cleveland-Cliffs knew or showed reckless disregard for whether its bonus pay scheme and off the clock policy violated the FLSA, Cleveland-Cliffs owes Hodock and the other Hourly Employees these wages for at least the past 3 years.

134. Cleveland-Cliffs is also liable to Hodock and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

135. Finally, Hodock and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### JURY DEMAND

136. Hodock demands a trial by jury on all Counts.

### RELIEF SOUGHT

WHEREFORE, Hodock, individually and on behalf of the other Hourly Employees, seeks the following relief:

    a.    An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

    b.    An Order finding Cleveland-Cliffs liable to Hodock and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

    c.    Judgment awarding Hodock and the other Hourly Employees all unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA;

    d.    An Order awarding attorneys' fees, costs, and expenses;

    e.    An Order awarding pre- and post-judgement interest at the highest applicable rates; and

    f.    Such other and further relief as may be necessary and appropriate.

[THIS SPACE LEFT INTENTIONALLY BLANK.]

Date: April 9, 2025 Respectfully submitted,

**POWELL & MAJESTRO P.L.L.C.**

By: /s/ *Anthony J. Majestro*
Anthony J. Majestro (WVSB 5165)
Graham B. Platz (WVSB 14093)
405 Capitol Street, Suite 807
Charleston, West Virginia 25301
Phone: (304) 346-2889
Fax:     (304) 346-2895
amajestro@powellmajestro.com
gplatz@powellmajestro.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLC**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:     (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:     (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR HODOCK & THE HOURLY EMPLOYEES**